**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

BOSTON SCIENTIFIC CORPORATION and BOSTON SCIENTIFIC SCIMED, INC.,

Plaintiffs,

v.

COOK GROUP INCORPORATED and COOK MEDICAL LLC,

Defendants.

Civil Action No. 15-980-LPS-CJB

**MEMORANDUM ORDER**

At Wilmington this **18th day of April, 2016**.

**WHEREAS**, the Court has considered the parties' letter submissions, (D.I. 31, 32, 34), relating to Plaintiffs Boston Scientific Corporation and Boston Scientific Scimed, Inc. (collectively, "BSC") and Defendants Cook Group Incorporated and Cook Medical LLC's (collectively, "Cook") pending motion to resolve a protective order dispute, (D.I. 30), as well as the parties' arguments made during the April 7, 2016 teleconference with the Court;

**NOW, THEREFORE, IT IS HEREBY ORDERED** that:

1. With regard to the parties' first dispute as to the scope of the subject matter that the prosecution bar shall cover, the Court will ADOPT Cook's proposals (as reflected in D.I. 34-1 at ¶¶ 5(b), 5(c), 8 and 16). Federal Circuit law governs the determination of whether and under what circumstances a patent prosecution bar should be included in a protective order. *In re Deutsche Bank Trust Co. Ams.*, 605 F.3d 1373, 1377-78 (Fed. Cir. 2010). A party seeking imposition of a patent prosecution bar must show that, *inter alia*, "the scope of activities

prohibited by the bar . . . and the subject matter covered by the bar reasonably reflect the risk presented by the disclosure of proprietary competitive information." *Id.* at 1381.[1] The risk of inadvertent disclosure turns on "the extent to which counsel is involved in 'competitive decisionmaking' with its client." *Id.* at 1378 (citation omitted). The Court must then "balance" that risk against the potential harm the party affected by the portion of the bar at issue would face, were it to be denied its counsel of its choice if that portion of the bar were adopted. *Id.* at 1380.

2. While there is no dispute here that the protective order should include a prosecution bar, the parties dispute the scope of that bar. Specifically, Cook proposes that the patent prosecution bar reflected in paragraphs 5(b), 5(c) and 16 should extend to qualified persons who are "regularly involved in (directly or by means of supervision) the preparation or prosecution of patent applications related to endoscopic hemostatic clips[,]" and that the bar

---

[1] The *Deutsche Bank* Court also noted, however, that "the party seeking an exemption from a patent prosecution bar must show on a counsel-by-counsel basis" that: (1) counsel's representation of the client in matters before the United States Patent and Trademark Office ("PTO") does not and is not likely to implicate competitive decisionmaking related to the subject matter of the litigation so as to give rise to a risk of inadvertent use of confidential information learned in litigation; and (2) that the potential injury to the moving party from restrictions imposed on its choice of litigation and prosecution counsel outweighs the potential injury to the opposing party caused by such inadvertent use. *Id.* This and other references in *Deutsche Bank* to the different burdens placed on the different parties can create some confusion. The Court recently addressed the issue of which party bears the burden of persuasion in a case like this—where the parties are negotiating over the scope of a protective order that has not yet been entered, where both sides agree that some type of prosecution bar should be included, but where the sides disagree as the scope of that bar. *Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*, Civil Action No. 15-691-LPS-CJB, 2016 WL 447794, at *1 n.1 (D. Del. Feb. 4, 2016). There, the Court explained its view that "the result most faithful to the language used in *Deutsche Bank* is that [the defendant/accused infringer] bears the burden [] to demonstrate good cause for the imposition of the disputed portion of the prosecution bar at issue—that is, that it bears the burden of demonstrating why, after a balancing of the 'risk' and 'harm' factors, that balance weighs in favor of [its] proposal." *Id.* (citing *Deutsche Bank*, 605 F.3d at 1380).

reflected in paragraph 8 should extend to "any individual involved in (directly or by means of supervision) the preparation or prosecution of any patent application claiming priority to one or more of the patents-in-suit (or claiming priority to any patent application or patent relating to one or more of the patents-in-suit)[.]" (D.I. 34-1) Meanwhile, BSC proposes that, with respect to these paragraphs, "if any otherwise Qualified Person is involved in . . . the preparation or prosecution of a patent application related to endoscopic hemostatic clips, any patent resulting from such applications may not be asserted based on the manufacture, use, or sale, offer for sale, or importation of any *endoscopic hemostatic clip product of a party to this action*, an Affiliate of a party to this action, or the successors or assigns thereof" where the italicized language "shall not include products manufactured or distributed by the party or its Affiliate for another entity or that were acquired by the party or its Affiliate after the close of discovery[.]" (*Id.* (emphasis added))

3. With regard to the risk presented by inadvertent disclosure, there are a number of factors suggesting that the risk here is high. For example, it is undisputed that the parties are "'major'" direct competitors in the endoscopic hemostatic clip market. (*See* D.I. 32 at 1 (quoting D.I. 19 at ¶ 15)) Further, in its letter briefing, Cook has set out a timeline of activities showing that after the launch of Cook's accused Instinct™ Clip product in March 2011, there was a noticeable "flurry" of BSC patent applications (including applications that led to the four patents-in-suit). (*Id.* at 1-2) And BSC presently has five patent applications relating to the patents-in-suit pending before the PTO, with more to possibly come. (*Id.* at 2) Moreover, BSC has identified its in-house counsel Michael Lynn as an individual who may access Cook's confidential information in this litigation. (D.I. 34-1) Cook has proffered Mr. Lynn's online

biography, which indicates that Mr. Lynn's practice as IP Counsel for BSC includes "patent portfolio management and strategic counseling, . . . prosecution, . . . and litigation" and that he is "a member of [BSC's] patent review, and management boards, and is responsible for developing and executing strategies to grow and enforce worldwide IP portfolios." (D.I. 32, ex. 2) The Court agrees with Cook that, to the extent that Mr. Lynn is indeed involved in these tasks, he would likely be engaged in competitive decisionmaking—a role that "heighten[s] the risk of inadvertent use of Cook's confidential information." (*Id.* at 4) Taking all of these facts together, Cook has shown that "there is an unacceptable risk that Cook's confidential information" may be inadvertently used by BSC (such as in the amendment of pending or future claims) in the prosecution of patents relating to endoscopic hemostatic clips, in a manner that could assist BSC in further targeting Cook's products. (*Id.* at 2-3)

4. In evaluating the potential for harm that is key to the second prong of the analysis, a court should consider factors such as "the extent and duration of counsel's past history in representing the client before the PTO, the degree of the client's reliance and dependence on that past history, and the potential difficulty the client might face if forced to rely on other counsel for the pending litigation or engage other counsel to represent it before the PTO." *Deutsche Bank*, 605 F.3d at 1381. With regard to this prong, BSC's initial submission to the Court asserted only that it "would be significantly prejudiced if the in-house attorneys tasked with directing this litigation[] were prohibited from fulfilling their concurrent responsibilities of overseeing prosecution of applications generally related to endoscopic hemostatic clips, but completely unrelated to the products at issue in this case." (D.I. 31 at 3) Yet its submission was devoid of any further supporting factual information "such as who these attorneys are, their roles in the

litigation and prosecution, and whether other in-house counsel can take any of these responsibilities to accommodate the bar." (D.I. 32 at 3) Indeed, the only specific information about BSC's counsel that was provided in the parties' briefing (information relating to Mr. Lynn) came from Cook, not from BSC. With the risk of inadvertent disclosure fairly clear and prominent here, the lack of a record as to specific harm to BSC militates in favor of adopting Cook's (broader) proposal as to the scope of the subject matter of the prosecution bar reflected in paragraphs 5(b), 5(c), 8 and 16.

5. The *language* in the parties' respective proposals also convinces the Court that Cook's proposal more reasonably reflects the magnitude of the risk at issue. Cook's proposal is clear, and would have the bar extend to patent applications that are related to the subject matter of the patents-in-suit (that relating to endoscopic hemostatic clips). Other courts have consistently held that prosecution bars that are co-extensive with the subject matter of the asserted patents, as Cook proposes here, are proper in scope.[2] *See, e.g.*, *Univ. of Va. Patent Found. v. Gen. Elec. Co.*, CASE NO. 3:14-cv-00051, 2016 WL 379813, at *3 (W.D. Va. Jan. 29, 2016) (noting that "courts commonly define the scope of the prosecution bar as, like here, relating to the subject matter of the patents-in-suit") (internal quotation marks and citation omitted); *Front Row Techs., LLC v. NBA Media Ventures, LLC*, 125 F. Supp. 3d 1260, 1283 (D.N.M. 2015) ("Courts generally center the subject matter that prosecution bars cover on the patents at issue in their cases."); *Eon Corp. IP Holdings, LLC v. AT&T Mobility LLC*, 881 F. Supp. 2d 254, 258 (D.P.R. 2012) ("the subject matter of a prosecution bar should be 'coextensive

[2] Indeed, BSC itself initially proposed that the scope of the prosecution bar extend to "patent applications related to the technical subject matter of the litigation." (D.I. 32 at 3 n.1 & ex. 1 at ¶¶ 5(c), 16)

with the subject matter of the patents-in-suit'") (quoting *Applied Signal Tech., Inc. v. Emerging Mkts. Commc'ns, Inc.*, No. C-09-02180 SBA (DMR), 2011 WL 197811, at *3 (N.D. Cal. Jan. 20, 2011)). BSC's revised proposal, in contrast, appears to be overbroad and ambiguous. (D.I. 34 at 2) For instance, BSC's language does not extend to clip products "manufactured or distributed by the party or its Affiliate for another entity," and it is not clear to the Court exactly what circumstances this language is intended to cover. In fact, Cook asserts that this language would exclude Cook's accused Instinct product, since that clip is distributed by Cook for the benefit of other entities such as hospitals. (*Id.*)[3]

6. With regard to the parties' second dispute—as to whether the prosecution bar should extend to post-grant proceedings regarding the patents-in-suit or related applications and/or patents—the Court will also ADOPT Cook's proposal (as reflected in D.I. 34-1 at ¶ 16). As for the first prong of the inquiry, it is true that there is generally less risk that counsel may inadvertently use confidential information learned during the course of litigation in post-grant proceedings (as opposed to in the prosecution of a new patent), as claims may only be narrowed in those proceedings. (*See* D.I. 31 at 3-4); *Toshiba Samsung Storage Tech. Korea Corp. v. LG Elecs., Inc.*, Civil Action No. 15-691-LPS-CJB, 2016 WL 447794, at *2 (D. Del. Feb. 4, 2016) (citing cases). Here, however, Cook has pointed with some specificity to the history between the parties, in order to explain why this risk would be more acute. (D.I. 32 at 4)

7. On the other hand, as to the second prong of the inquiry, there is nothing specific in the evidentiary record before the Court as to the harm that BSC would suffer from

---

[3] BSC, for its part, did not directly address this argument in its portion of the parties' recent joint submission. (*See* D.I. 34 at 1-2)

having restrictions imposed on its right to counsel of its choice. Instead, BSC simply asserted that it would "potentially suffer harm and prejudice if its in-house attorneys and outside counsel most familiar with the patents-in-suit and this litigation are barred from participating" in post-grant proceedings, and that its "in-house attorneys have a history of involvement in both litigation and post-grant proceedings[.]" (D.I. 31 at 4; *see also* D.I. 34 at 2) As Cook accurately points out, BSC's submission here again failed to "identify those attorneys, the purported history, or their involvement in the litigation and post-grant proceedings." (D.I. 32 at 4)

8. During the April 7, 2016 teleconference with the Court, however, BSC provided some additional detail in this regard. There it became clear that BSC wishes for its in-house counsel, Mr. Lynn, and lead trial counsel, Marc Cohn, to participate in any future post-grant proceedings involving the patents-in-suit or applications and/or patents that claim priority thereto. With respect to Mr. Lynn, BSC's counsel explained that he supervises one or two people and therefore is not a competitive decisionmaker, and that he is BSC's resident legal expert with respect to endoscopic hemostatic clips. With respect to Mr. Cohn, BSC explained that he has had a significant amount of experience participating in *inter partes* review proceedings on behalf of BSC, and that BSC would like him to continue in that role with respect to the relevant patents here, if necessary. Yet this, for now, is simply attorney argument. Without any record evidence to support these assertions, the Court does not have sufficient information to determine that the potential for harm to BSC is sufficient to outweigh the risk presented by the disclosure of proprietary competitive information. Accordingly, on this record, the Court finds that good cause exists to support entry of Cook's proposal. *Cf. M/A-COM Tech. Solutions Holdings, Inc. v. Laird Techs., Inc.*, Civil Action No. 14-181-LPS, (D.I. 166) (D. Del. July 31, 2014) (finding good cause

to adopt a prosecution bar that extended to post-grant proceedings "to deal with the risk of the patentee strategically narrowing the scope of its claims based on (even inadvertently) information it learns from [the defendant's] confidential information" where "[p]atentee has provided no evidence that it will be unduly prejudiced by [the defendant's] proposed bar, particularly as there is no evidence that current litigation counsel has ever participated in prosecuting patents for [p]laintiff").

9. Even so, the Court acknowledges that this second dispute is a closer call than the first one, due to the nature of post-grant proceedings. Had BSC made a better record with respect to the harm that it would suffer from having restrictions imposed on its right to the counsel of its choice, that might have altered the outcome here. And in light of the truncated nature of the Court's discovery dispute processes (which are designed to promote efficient resolution of discovery or protective order disputes), the Court does not entirely fault BSC for not having made a better record. Accordingly, the Court would consider a request to modify the Protective Order in the future as to this issue, if the evidence warrants it.

10. The parties are ORDERED to submit a final proposed Protective Order, incorporating the above decisions, by no later than **April 25, 2016**.

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE