## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

BOSTON SCIENTIFIC CORPORATION )
and BOSTON SCIENTIFIC SCIMED, )
INC., )
                          )
         Plaintiffs/Counterclaim )
         Defendants, )
                          )
     v.                         )      Civil Action No. 15-980-LPS-CJB
                          )
COOK GROUP INCORPORATED and )
COOK MEDICAL LLC, )
                          )
         Defendants/ )
         Counterclaimants. )

## REPORT AND RECOMMENDATION

In this action filed by Plaintiffs/Counterclaim Defendants Boston Scientific Corporation

("BSC") and Boston Scientific SciMed, Inc. ("BSSI") (collectively, "Plaintiffs" or "Boston

Scientific") against Defendants/Counterclaimants Cook Group Incorporated and Cook Medical

LLC (collectively, "Defendants" or "Cook"), Plaintiffs allege infringement of United States

Patent Nos. 8,685,048 (the "'048 patent"), 8,709,027 (the "'027 patent"), 8,974,371 (the "'371

patent"), and 9,271,731 (the "'731 patent") (collectively, the "asserted patents" or the "patents-in-

suit"). Presently before the Court is the matter of claim construction. The Court recommends

that the District Court adopt the constructions set forth below for the three terms discussed in this

Report and Recommendation.[1]

## I.      BACKGROUND AND LEGAL STANDARDS

---

[1]      On December 22, 2016, the Court issued a Report and Recommendation regarding claim construction for seven disputed terms/term sets. (D.I. 80) The instant Report and Recommendation addresses the remaining three disputed terms that were argued at the *Markman* hearing, each of which involve consideration of case law relating to means-plus-function claiming.

This Report and Recommendation incorporates by reference the content of Sections I and II of the Court's December 22, 2016 Report and Recommendation, which included background on the parties, the asserted patents and the case's procedural posture, as well as a summary of the general principles of claim construction. (D.I. 80 at 2-6)

The claim construction disputes set out in this Report and Recommendation relate to Cook's assertion that certain claims are indefinite under Section 112, and so some discussion of the legal standards for definiteness is now also in order. Section 112 requires that a patent claim "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention." 35 U.S.C. § 112, ¶ 2 ("Section 112, paragraph 2").[2] If it does not, the claim is indefinite and therefore invalid. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2125 (2014) ("*Nautilus*"). In *Nautilus*, the Supreme Court of the United States set out the test to be applied in the indefiniteness inquiry: "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Id.* at 2124. Definiteness is to be evaluated from the perspective of someone skilled in the relevant art at the time the patent was filed. *Id.* at 2128.

The primary purpose of the definiteness requirement is to ensure that patent claims are written in such a way that they give notice to the public of what is claimed, thus enabling

---

[2]　　The Court here refers to the version of Section 112 as it existed prior to the passage of the Leahy-Smith America Invents Act ("AIA"). Although the structure of Section 112 changed after the AIA's passage, those changes are applicable only to any patent application filed on or after September 16, 2012. *See Alcon Research Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1183 n.1 (Fed. Cir. 2014). Because the applications leading to the patents-in-suit were filed prior to September 16, 2012, the Court will hereafter refer to the pre-AIA version of Section 112, as do the parties in their briefing. (D.I. 56 at 15 n.10)

interested members of the public (e.g., competitors of the patent owner) to determine whether they infringe. *All Dental Prodx, LLC v. Advantage Dental Prods., Inc.*, 309 F.3d 774, 779-80 (Fed. Cir. 2002). Put another way, "[a] patent holder should know what he owns, and the public should know what he does not." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 731 (2002).

Like claim construction, definiteness is a question of law for the court. *H-W Tech., L.C. v. Overstock.com, Inc.*, 758 F.3d 1329, 1332 (Fed. Cir. 2014); *Pi-Net Int'l Inc. v. JPMorgan Chase & Co.*, 42 F. Supp. 3d 579, 586 (D. Del. 2014). The United States Court of Appeals for the Federal Circuit has stated that "[a]ny fact critical to a holding on indefiniteness . . . must be proven by the challenger by clear and convincing evidence." *Intel Corp. v. VIA Techs., Inc.*, 319 F.3d 1357, 1366 (Fed. Cir. 2003); *see also Tech. Licensing Corp. v. Videotek, Inc.*, 545 F.3d 1316, 1338 (Fed. Cir. 2008).

## II.    DISCUSSION

Below, the Court addresses the three remaining terms at issue—"tension member," "a linkage" and "opening element"—in the order in which they were to be presented at the *Markman* hearing.

### A.    "tension member"

The term "tension member" appears in dependent claims 10 and 17 of the '371 patent. Plaintiffs assert that the term should be afforded its plain and ordinary meaning. (D.I. 56 at 29-30) Defendants argue that "tension member" is a means-plus-function limitation under Section 112, paragraph 6. (*Id.*) They state that the term connotes only the function "'to bias the first and second arms to the expanded configuration[,]'" with a corresponding structure of "tension

3

member 206, clip arms 208, and yoke 204 with yoke overhangs 254, with the proximal ends 252

of clip arms 208 under yoke overhangs 254, so that the clip arms 208 are allowed to pivot over

tension member 206[.]" (*Id.*)

### 1.     35 U.S.C. § 112, ¶ 6

35 U.S.C. § 112, ¶ 6 ("Section 112, paragraph 6") provided as follows:

> An element in a claim for a combination may be expressed as a
> means or step for performing a specified function without the
> recital of structure, material, or acts in support thereof, and such
> claim shall be construed to cover the corresponding structure,
> material, or acts described in the specification and equivalents
> thereof.

The "means-plus-function" technique of claim drafting is a "convenience" that allows a patentee

to express a claim limitation in functional terms "without requiring the patentee to recite in the

claims all possible structures" that could perform that function. *Med. Instrumentation &*

*Diagnostics Corp. v. Elekta AB*, 344 F.3d 1205, 1211 (Fed. Cir. 2003) (internal quotation marks

and citation omitted).  In exchange for getting the benefit of this drafting convenience, however,

patentees must disclose, in the written description of the patent, a corresponding structure for

performing the claimed function. *Noah Sys, Inc. v. Intuit Inc.*, 675 F.3d 1302, 1318 (Fed. Cir.

2012); *see also Elekta*, 344 F.3d at 1210 ("'[T]he price that must be paid for use of that

convenience is limitation of the claim to the means specified in the written description and

equivalents thereof.'").  A patentee satisfies this requirement "only if the specification or

prosecution history *clearly links or associates* that structure to the function recited in the claim."

*In re Aoyama*, 656 F.3d 1293, 1297 (Fed. Cir. 2011) (emphasis added) (quoting *Elekta*, 344 F.3d

at 1210); *see also Elekta*, 344 F.3d at 1220 ("The public should not be required to guess as to the

4

structure for which the patentee enjoys the right to exclude. The public instead is entitled to

know precisely what kind of structure the patentee has selected for the claimed functions, when

claims are written according to section 112, paragraph 6."). "If the specification does not contain

an adequate disclosure of the structure that corresponds to the claimed function, the patentee will

have failed to particularly point out and distinctly claim the invention as required by . . . section

112, [paragraph 2] which renders the claim invalid for indefiniteness." *Blackboard, Inc. v.*

*Desire2Learn, Inc.*, 574 F.3d 1371, 1382 (Fed. Cir. 2009) (internal quotation marks and citation

omitted).

Before determining whether a claim term satisfies the requirements of Section 112,

paragraph 6, a court must assess whether Section 112, paragraph 6 even applies to the term in the

first place. In making *that* determination, the Federal Circuit has long recognized the importance

of whether or not the claim element utilizes the term "means." *Williamson v. Citrix Online, LLC*,

792 F.3d 1339, 1348 (Fed. Cir. 2015). If it does, then this creates a rebuttable presumption that

Section 112, paragraph 6 is applicable; if it does not, then there is a rebuttable presumption that

Section 112, paragraph 6 does not apply. *Id.*[3] The party challenging that presumption bears the

burden of overcoming it "by a preponderance of the evidence." *Apple Inc. v. Motorola, Inc.*, 757

---

[3]     In *Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015), the Federal
Circuit overruled prior precedent that had described this presumption as a "'strong'" one, and
instead held that to overcome the presumption, a party does not need to exceed a "heightened
burden" nor make a "heightened evidentiary showing[.]" 792 F.3d at 1349. Although
*Williamson* altered the strength of the presumption, the Court can still look to pre-*Williamson*
Federal Circuit case law for some guidance in analyzing whether disputed terms convey
sufficiently definite structure to a skilled artisan. *See M2M Sols. LLC v. Sierra Wireless Am.,
Inc.*, Civil Action No. 12-30-RGA, 2015 WL 5826816, at *2-3 (D. Del. Oct. 2, 2015); *see also
TriPlay, Inc. v. WhatsApp, Inc.*, Civil Action No. 13-1703-LPS-CJB, 2016 WL 3574012, at *5
n.7 (D. Del. June 30, 2016), *adopted by* 2016 WL 6778215 (D. Del. Nov. 15, 2016); *see also*
(D.I. 67 at 151-52).

F.3d 1286, 1298 (Fed. Cir. 2014), *overruled on other grounds by Williamson*, 792 F.3d 1339. If, for example, a claim term does not use the word "means," then a challenger may overcome the presumption that Section 112, paragraph 6 does not apply by showing that "the claim term fails to 'recite[] sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *Williamson*, 792 F.3d at 1348 (quoting *Watts v. XL Sys., Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000)); *see also M2M Sols. LLC v. Sierra Wireless Am., Inc.*, Civil Action No. 12-30-RGA, 2015 WL 5826816, at *1 (D. Del. Oct. 2, 2015). The standard is "whether the words of the claim are understood by persons of ordinary skill in the art to have a sufficiently definite meaning as the name for structure." *Williamson*, 792 F.3d at 1348; *see also M2M*, 2015 WL 5826816, at *1. "[I]t is proper to consult the intrinsic record, including the written description, when determining if a challenger has rebutted the presumption that a claim lacking the term 'means' recites sufficiently definite structure." *Inventio AG v. ThyssenKrupp Elevator Ams. Corp.*, 649 F.3d 1350, 1357 (Fed. Cir. 2011), *overruled on other grounds by Williamson*, 792 F.3d 1339; *see also Apple*, 757 F.3d at 1298.

If a claim term turns out to be subject to the application of Section 112, paragraph 6, then a court must assess whether the specification discloses sufficient structure to correspond to the claimed function. *Williamson*, 792 F.3d at 1351. This process of construing a means-plus-function limitation proceeds in two steps. The first step is determining the claimed function of the limitation. *Id.*; *Medtronic, Inc. v. Advanced Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1311 (Fed. Cir. 2001). The second step is identifying the corresponding structure disclosed in the specification and equivalents thereof. *Williamson*, 792 F.3d at 1351; *Medtronic, Inc.*, 248 F.3d at 1311.

Turning now back to the claim term "tension member," the Court first notes that the relevant claims of the '371 patent do not use the words "means" in discussing what a "tension member" is or how it functions. And so there is a presumption that Section 112, paragraph 6 does not apply. Defendants nonetheless contend that this presumption has been overcome here. (D.I. 56 at 29-30; D.I. 61 at 19-20) The Court will therefore "construe the claim limitation to decide if it connotes 'sufficiently definite structure' to a person of ordinary skill in the art[.]" *Apple*, 757 F.3d at 1296.

According to Plaintiffs, the claims provide "a structural description of the 'tension member'" through their description of how the "tension member" "connects to and interacts with other components of the invention." (D.I. 57 at 25) (citing *Finjan, Inc. v. Proofpoint, Inc.*, No. 13-cv-05808-HSG, 2015 WL 7770208, at *11 (N.D. Cal. Dec. 3, 2015)) And indeed, the claims state that the "tension member" is "slidably received in the capsule and configured to bias the first and second arms to the expanded configuration." ('371 patent, cols. 17:34-36, 18:33-35) This description, in addition to articulating the "tension member"'s function (it biases the clip arms), also provides insight into the required physical structure of the "tension member." That is, as Plaintiffs note, it requires that the "tension member" is of a size and shape such that: (1) it "fits inside the capsule"; (2) it can be "positioned between the clip arms"; and (3) it is able to exert a force on both the clip arms to "engage[] the clip arms [and] urge them radially outward." (D.I. 57 at 26; Plaintiffs' Claim Construction Hearing Slides at 50) Courts have found that claim elements described in similar ways have not been subject to Section 112, paragraph 6. *See, e.g., Telebrands Corp. v. GMC Ware, Inc.*, CASE NO.: CV 15-03121 SJO (JCx), 2016 WL 6237917, at *8 (C.D. Cal. Aug. 17, 2016) (concluding that the term "driving element" was "outside the

ambit of [Section 112, paragraph 6,]" in part because the claim language imposed limitations on the shape, location, and size of the disputed component, and also described how the element "operate[d] against the 'threaded sleeve' of the actuating element"); *Finjan*, 2015 WL 7770208, at *11 (finding that claim's description of how a "content processor" interacted with the invention's other components "inform[ed] the term's structural character"); *cf. DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 469 F.3d 1005, 1023-24 (Fed. Cir. 2006) (concluding, pre-*Williamson*, that the term "compression member" was not a means-plus-function limitation because the "claim language demonstrates that the compression member must fit inside the cylindrical opening and be of sufficient size to exert a force on the screw head, which implies structure" and "[t]he specification likewise makes clear that the term . . . refers to a particular cylindrical insert and is not simply a general reference to any structure that will perform a particular function").

The specification supports this conclusion. For example, it again explains that the tension member must be structured and positioned such that it "allow[s] [the clip arms] to pivot over the tension member [], which in turn biases the distal ends" of the clip arms, so long as the proximal ends of the clip arms are under the yoke overhang. ('371 patent, col. 10:44-48) This is depicted in several of the illustrative figures. (*Id.*, FIGS. 9, 10, 12) Similarly, the Summary of the Invention section further describes the tension member as "connected to the clip arms and biasing the clip arms toward an open, tissue receiving configuration[.]" (*Id.*, col. 1:53-55) Thus, the claims, specification, and figures not only articulate where the "tension member" is located and how it interacts with other parts of the apparatus, but they do so in a way that provides insight into how the "tension member" itself must be structured.

8

In support of their contrary contention, Defendants rely on four cases. First, they cite to this Court's decision in *LifePort Sciences LLC v. Cook Inc.*, Civil Action No. 13-362-GMS, 2015 WL 11237044 (D. Del. Aug. 20, 2015), for the proposition that "[t]he word 'member' is a generic nonce word that connotes no definite structure." (D.I. 56 at 30) But *LifePort Sciences* does not hold that "member" is a generic nonce word. In the opinion cited, the *LifePort Sciences* Court reconsidered its earlier finding that "displacement member" should not be construed as a means-plus-function term. 2015 WL 11237044, at *1 & n.1 (internal quotation marks omitted). The *LifePort Sciences* Court came to this conclusion for two reasons, neither of which had to do with categorizing "member" as a nonce word: (1) the Court's earlier decision had been premised on a mistaken argument that the patentee itself had never made; and (2) the Court had improperly failed to credit a strong argument made by the defendants: that the plaintiff had agreed that a term that "employed identical language to the displacement member term . . . failed to recite adequate structure[,]" and so the "displacement member" term should be viewed the same way. *Id.* at *1. The instant case is readily distinguishable, as there is no other claim term employing identical language to the term at issue, and Plaintiffs have here offered persuasive intrinsic evidence as to the "tension member"'s structure.

Next, Defendants cite two cases for the proposition that if a patentee merely adds a prefix to a generic nonce word, and the prefix simply describes the function of the nonce word, then this cannot save a term from being found indefinite under Section 112. (D.I. 56 at 30 (citing *Williamson*, 792 F.3d at 1351; *Mass. Inst. of Tech. & Elecs. for Imaging, Inc. v. Abacus Software*, 462 F.3d 1344, 1354 (Fed. Cir. 2006) ("*MIT*")) The Court does not quarrel with this general proposition. It simply finds the proposition not to be relevant here, as no case law

indicates that "member" is in fact a nonce word.[4]

Finally, Defendants rely on the Federal Circuit's decision in *Media Rights Technologies, Inc. v. Capital One Financial Corp.*, 800 F.3d 1366 (Fed. Cir. 2015), *cert. denied*, 136 S. Ct. 1173 (2016), in arguing that the "descriptions in the claims of how the tension member 'connects to and interacts with other components'" does not provide "the requisite structural description." (D.I. 61 at 19 (quoting D.I. 57 at 25-26)) While this is Defendants' strongest case in support of their argument, the Court finds that it does not carry the day here.

The *Media Rights* Court found that the term "compliance mechanism" did not connote a definite structure because "the claims simply state[d] that the 'compliance mechanism' can perform various functions." *Media Rights*, 800 F.3d at 1372. The written description did "depict[] and describe[] how what [was] referred to as the 'copyright compliance mechanism'

---

[4]     At the *Markman* hearing, counsel for Defendants stated that the Manual of Patent Examining Procedure ("MPEP") lists "member" as a term that is commonly recognized as a substitute for "means." (Tr. at 144) The cited section of the MPEP, however, actually lists "member *for*" as the term at issue, MPEP § 2181(I)(A) (9th ed. 2015) (emphasis added), and cites in support to a case, *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1214-15 (Fed. Cir. 1998), in which the claims at issue required "a movable link member *for* holding the lever out of engagement with the cam surface before entry of a combination and *for* releasing the lever after entry of the combination[,]" (*id.* (emphasis added and omitted)). In light of the lack of supporting case law suggesting that "member" is a nonce term, the Court finds this difference significant, as the inclusion of the word "for" indicates an emphasis on function. *Cf. Mas-Hamilton Grp.*, 156 F.3d at 1214-15 (suggesting that the "subsequent functional language" after "movable link member" in the claims, which begins with the use of the word "for," made a significant difference in the Court's conclusion that the term was properly construed in means-plus-function format, since "[s]uch language is precisely what was intended by the statutory phrase" in then-Section 112, paragraph 6). Indeed, the very next paragraph of the MPEP section at issue identifies the terms "reciprocating member" and "eyeglass hanger member" as "examples of structural terms that have been found **not** to invoke [Section 112, paragraph 6]." MPEP § 2181(I)(A) (emphasis in original) (citing *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1369-70 (Fed. Cir. 2002); *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1318-19 (Fed. Cir. 1999)).

[was] connected to various parts of the system, how the 'copyright compliance mechanism' function[ed], and the potential—though not mandatory—functional components of the 'copyright compliance mechanism.'" *Id.* But none of the passages describing the "compliance mechanism" defined the term "in specific structural terms." *Id.* at 1372-73.

Here, the circumstances surrounding the Section 112, paragraph 6 analysis are different than they were in *Media Rights*. For one thing, as Plaintiffs' counsel noted, *Media Rights* involved the "context of software and hardware" and "computer systems[,]" which is a "much more open-ended[,] convoluted[,] complex art" than that at issue here (involving clips). (D.I. 67 (Transcript of October 12, 2016 Claim Construction Hearing (hereinafter, "Tr.")) at 155) Moreover, as was detailed above, the '371 patent's claims not only provide a description of how the "tension member" is connected to other components of the clip at issue and how it functions, but they *require* that a "tension member" have a certain physical structure in order to perform its work. That is, they require that the "tension member" must be of a certain size and shape (such that it fits inside the capsule), and that it be structured such that it can be positioned between the clip arms and have a physical relationship with both of the clip arms (one where it is "configured to bias the first and second arms [of the clip] to the expanded configuration"). Moreover, there are several figures identifying exemplary embodiments that depict a "tension member" with just this type of physical structure. This connotes sufficient structure to avoid construction as a means-plus function limitation.

The Court thus finds that Defendants have not met their burden of overcoming, by a preponderance of the evidence, the presumption that Section 112, paragraph 6 does not apply.

### 2.    Construction

11

Having determined that Section 112, paragraph 6 does not apply, the Court will construe "tension member" according to Plaintiffs' description of what the claims require. (*See* D.I. 57 at 26) The Court therefore recommends that "tension member" be construed as "a member that fits inside the capsule, is positioned between the clip arms, and engages the clip arms to urge them radially outward."

### B. "a linkage"

The parties next dispute the term "a linkage" as recited in Claims 1, 13, and 20 (and the associated dependent claims)[5] of the '027 patent. Plaintiffs assert that the meaning of "linkage" is sufficiently clear and requires no construction. (D.I. 57 at 10) Defendants argue that the claims recite "linkage" solely in the following functional terms, with no corresponding structure:

- **Claims 1, 3-11**: ("to spread the first and second clip legs apart from one another into a tissue-receiving configuration as the control member is moved distally relative to the clip"; and "to drive the first and second clip legs radially outward as the control member is moved distally relative to the clip")

- **Claims 13-15, 17-19**: ("to move the clip distally out of the sleeve"; "[to] cause the first and second clip legs to spread apart from one another into a tissue-receiving configuration as the clip is moved distally relative to the sleeve"; and "to drive the first and second clip legs radially outward as the control member is moved distally relative to the clip")

- **Claim 20**: ("to drive the first and second clip legs radially outward to a tissue-receiving configuration" when the control member is "mov[ed] . . . distally")[.]

(D.I. 56 at 14-15) They contend that because this term is purely functional, it is indefinite under Section 112, paragraph 2 (even if found to invoke means-plus-function claiming under Section

---

[5]     Dependent claims 2, 3, 16, and 17 of the '027 patent also use the term "linkage[.]" ('027 patent, cols. 15:46, 49-51; 16:37, 40-42)

112, paragraph 6). The Court will begin its analysis by determining whether the term invokes Section 112, paragraph 6.

### 1. 35 U.S.C. § 112, ¶ 6

Applying the same type of analysis as it did with the term "tension member," the Court begins by noting that, as with the previous term, here the relevant claims do not use the word "means." This triggers the rebuttable presumption that Section 112, paragraph 6 does not apply.

To be sure, Defendants are correct when they point out that each claim containing the term "linkage" recites functions that the "linkage" performs. (*See* D.I. 56 at 16; *see also* '027 patent, cols. 15:38-45; 16:19-26, 62-65) But they are incorrect in asserting that the word "linkage," in light of the context provided by the claims, does not refer to any particular structure. (D.I. 56 at 16; D.I. 61 at 5-6) While one portion of the language in the claims at issue recites that the "linkage" is "operatively associated with the control member[,]" ('027 patent, cols. 15:38, 16:19), or "coupled to the control member[,]" (*id.*, col. 16:57), other intrinsic evidence provides further detail as to structure. For example, claims 1, 13 and 20 all additionally explain that the "linkage" "contact[s] the inner surfaces of the first and second clip legs[,]" or use words to that effect. (*See, e.g., id.*, cols. 15:42-43; 16:23-24, 63-64)[6]

Additionally, Plaintiffs argue that their position is further supported by the fact that "the term 'linkage' or 'link' has been construed repeatedly by the courts without resorting to [use of Section 112, paragraph 6]." (D.I. 57 at 11-12 (citing cases)) Defendants respond by noting that "only one of the cases cited by Plaintiffs, *Rodgers v. Johnson Health Tech. Co.*, No. A-02-CA-

---

[6]      Moreover, the specification provides an exemplary description of the structure of the linkage that has these features. ('027 patent, cols. 8:60-9:3 (referencing a "linkage **1002**") & FIGS. 10A-B)

731, 2003 WL 25787488 (W.D. Tex. Dec. 8, 2003), actually considered the construction of a

term including the word 'linkage.'" (D.I. 61 at 6) And it is true that most of the cases cited by

Plaintiffs address some variation of the word "link," rather than "linkage." But Defendants offer

no reason why "linkage" connotes less structure than "link" does. Further, Defendants'

arguments for why *Rodgers* is inapplicable in the instant case, (*see id.* at 6-7), can actually be

viewed as providing further support for *Plaintiffs'* position. In *Rodgers*, as Defendants note,

"neither party . . . argued that 'linkage' was a means-plus-function limitation . . . [and] the court

*declined to construe* the term ['linkage assemblies for orienting the bottom of the feet of the

user']." (*Id.* at 7 (emphasis in original)); *see also Rodgers*, 2003 WL 25787488, at *2-3. That

neither party even suggested the possibility that the phrase including "linkage" should be

construed as a means-plus-function limitation could well be read as an indication that the phrase,

in fact, clearly connoted sufficient structure so as to avoid the need for further construction.

Indeed, the reason the *Rodgers* Court declined to construe the term was because it found that the

"language [was] *sufficiently clear* and [did] not require additional definition." *Rodgers*, 2003

WL 25787488, at *3 (emphasis added).[7]

For their part, Defendants rely primarily on a decision from the United States District

Court for the Southern District of Indiana: *SOP Services, Inc. v. Vital Hunting Gear, Inc.*, No.

---

[7]     The Court agrees with Plaintiffs' counsel's contention, asserted at the *Markman* hearing, that the terms "link" and "linkage" are commonly used in patents, and it would seem that litigants very rarely argue that these terms implicate Section 112, paragraph 6. (*See* Tr. at 132, 136-37, 149-50; *see also* D.I. 57 at 11-12 (citing cases)); *Cybergym Research LLC v. Icon Health & Fitness, Inc.*, Civil Action No. 2:05-CV-527-DF, 2007 WL 5688735, at *27-28 (E.D. Tex. Jan. 25, 2007) (construing "communication linkage"); *Hay & Forage Indus. v. New Holland N. Am., Inc.*, 25 F. Supp. 2d 1170, 1179-80 (D. Kan. 1998) (construing "telescoping linkage" to mean "a linkage having overlapping cylindrical sections").

3:11-cv-00112-RLY-WGH, 2013 WL 2445016 (S.D. Ind. June 5, 2013). (D.I. 56 at 16; D.I. 61 at 7) In *SOP Services*, according to Defendants, "the court directly addressed the issue presented here and held that the term 'linkage' failed to connote sufficiently definite structure to avoid [Section 112, paragraph 6]." (D.I. 61 at 7 (citing *SOP Servs.*, 2013 WL 2445016, at *7); *see also* D.I. 56 at 16) In *SOP Services*, however, the district court was addressing the term *"linkage mechanism* coupled between said arrow rest and a cable of a bow *for* actuating said arrow rest between said first resting position and said second position"—not the term "linkage" itself. 2013 WL 2445016, at *6-8 (emphasis added). Since the term at issue in *SOP Services* did not facially utilize the word "means," the presumption against means-plus-function claiming applied. *Id.* at *7.[8] In further assessing the Section 112, paragraph 6 issue, the *SOP Services* Court focused most particularly on the fact that "linkage" was used as a modifier to the term "mechanism"—a term that is itself a well-recognized "generic" term. *Id.* at *7; *see also MIT*, 462 F.3d at 1354. And, in determining that Section 112, paragraph 6 in fact applied to the term, the *SOP Services* Court was also clearly influenced by a particular figure in the patent-at-issue. That figure described "'an alternative embodiment of a *means for linking* the arrow rest of the present invention'"—providing further indication to the *SOP Services* Court that "linkage mechanism" was meant to be understood as a reference to a "'linkage *means*[.]'" *SOP Servs.*, 2013 WL 2445016, at *7 (emphasis in original).

There are at least two reasons why the decision in *SOP Services* is not apposite to the circumstances at issue here or helpful to Defendants. First, unlike in that case, here the term at

---

[8]     As *SOP Services* was a pre-*Williamson* case, the district court there was utilizing a "strong" presumption in this regard. *SOP Servs.*, 2013 WL 2445016, at *7.

issue ("linkage") is not used as a modifier; instead, as Plaintiffs' counsel notes, it is used "as a noun to do things." (Tr. at 134) Second, unlike in *SOP Services*, here the parties opposing application of Section 112, paragraph 6 (Plaintiffs) have identified persuasive evidence from the patent of the structure associated with the term. *Contra SOP Servs.*, 2013 WL 2445016, at *7.

The Court thus finds that Defendants have not overcome the presumption that Section 112, paragraph 6 does not apply to the term "a linkage."

### 2. 35 U.S.C. § 112, ¶ 2

Defendants also argue that "a linkage" is functional and indefinite under Section 112, paragraph 2. (D.I. 56 at 15-17) An indefiniteness inquiry under Section 112, paragraph 2 is "highly dependent on context (*e.g.*, the disclosure in the specification and the knowledge of a person of ordinary skill in the relevant art area.)." *Biosig Instruments, Inc. v. Nautilus, Inc.*, 783 F.3d 1374, 1378 (Fed. Cir. 2015) (internal quotation marks and citation omitted), *cert denied*, 136 S. Ct. 569 (2015).

Defendants' indefiniteness arguments here appear to be contingent on the Court finding that Section 112, paragraph 6 applies. (*See* D.I. 56 at 15-17) Indeed, the Court is not aware of any instance in which a term survived scrutiny under the first step of the Section 112, paragraph 6 analysis, but was still found to have fallen short of the requirements of Section 12, paragraph 2. *See TriPlay, Inc. v. WhatsApp, Inc.*, Civil Action No. 13-1703-LPS-CJB, 2016 WL 3574012, at *10 (D. Del. June 30, 2016), *adopted by* 2016 WL 6778215 (D. Del. Nov. 15, 2016); *see also Intellectual Ventures I, LLC v. Canon Inc.*, Civ. No. 13-473-SLR, 2015 WL 307868, at *2 (D. Del. Jan. 23, 2015) (determining that Section 112, paragraph 6 did not apply, and subsequently, that the "description provided by the claims and specification [was] also sufficient" for the term

16

to avoid being indefinite under Section 112, paragraph 2); *cf. In re Donaldson Co., Inc.*, 16 F.3d 1189, 1195 (Fed. Cir. 1994). For these reasons, the Court concludes that the term is not indefinite under Section 112, paragraph 2.

### 3.    Construction

As for the proper construction of the term, Plaintiffs cited certain dictionary definitions defining "linkage" "as a specific structure that transmits force between interconnected components." (D.I. 57 at 11 & exs. 1-2 (citing *Webster's II New College Dictionary* 638 (2001); *Am. Heritage Dictionary of the English Language* 1047 (3d ed. 1996)) At oral argument, they suggested that the following definition captured the well-accepted meaning of "linkage:" "[a] system of interconnected machine parts used to transmit power or motion[.]" (Tr. at 133, 137; *see also* Plaintiffs' Claim Construction Hearing Slides at 54; D.I. 57 at 11 & ex. 2)[9] Defendants respond by noting that "other definitions found in the same dictionaries [cited by Plaintiffs] . . . demonstrate that 'linkage' does not refer to any particular structure, but instead refers generally to '[t]he act or process of linking,' '[t]he condition of being linked,' or 'the state of being linked.'" (D.I. 61 at 5 (quoting D.I. 57, exs. 1-2))

Here, the Court finds that the dictionary definition offered by Plaintiffs can provide helpful guidance as to the meaning of the claim term, and that those definitions pointed out by Defendants do not. As was previously noted, the claim language shows that the recited "linkage"

---

[9]    As an alternative, Plaintiffs suggested "[a] system of interconnected machine elements, such as rods, springs and pivots, used to transmit power or motion." (Tr. at 133; Plaintiffs' Claim Construction Hearing Slides at 54; D.I. 57 at 11 & ex. 1) The Court finds that the first definition is more apposite, as the patent offers no indication that "rods, springs [or] pivots" should be particularly called out as examples of what might make up the "linkage" element. (*See* D.I. 61 at 6)

is a particular physical structure of the invention that interacts with other components, such as the control member and the inner surfaces of the clip legs. The definitions that Defendants point out, by contrast, would suggest a construction of "linkage" as a general "act," "process," "condition," or "state," and therefore would not comport with the language of the '027 patent. As such, the Court will not afford those definitions the same weight that it gives to Plaintiffs' proposed definition. *Cf. Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005) (cautioning against "the adoption of a dictionary definition entirely divorced from the context of the written description.").

Therefore, both the intrinsic and extrinsic evidence here suggests that the term should be afforded the construction proposed by Plaintiffs: "a system of interconnected machine parts used to transmit power or motion."

### C.     "opening element"

The term "opening element" is found in claims 1, 2, 12, 13, and 20 of the '731 patent. The independent claims 1, 12, and 20 recite "an opening element engaging inner walls of the first and second clip arms . . . urging [the clip to an] open tissue[-]receiving configuration[.]" ('731 patent, cols. 15:45-48, 16:32-35, 17:4-6) Defendants contend that "opening element" is a means-plus-function limitation under Section 112, paragraph 6. (D.I. 56 at 21) They propose that the following functions are recited in the respective claims:

- **Claims 1, 2-4, 6-10, 12-14**: (opening by "engaging inner walls of the first and second clip arms"; and "urging the first and second clip arms away from one another into the open tissue-receiving configuration")

- **Claims 13-15, 17-19**: (opening by "engaging inner walls of the first and second clip arms"; and "urging the clip to an open tissue receiving configuration")

18

- **Claim 20**: (opening by "urging the clip to an open tissue receiving configuration")[.]

(*Id.*) They further propose that:

> [t]he corresponding structure in the specification necessary to perform the recited functions are: control wire 1503, pill 1502 attached to the end of the control wire, two rigid arms 1504 located between the clip legs 1508, and pill well 1507 engaged with the pill 1502, such that the clip legs 1508 are forced apart from one another as the control wire 1503 is pulled in a proximal direction.

(*Id.*) This structure is disclosed in the specification as one embodiment of the invention. (*See* '731 patent, col. 11:47-59) Plaintiffs argue that "opening element" is not a means-plus function term and that it should be afforded its plain and ordinary meaning. (D.I. 57 at 16-17; D.I. 60 at 11-12)

### 1. 35 U.S.C. § 112, ¶ 6

The Court analyzes whether Section 112, paragraph 6 applies to the term "opening element" under the same framework as it used with the previous two terms. None of the claims use the word "means," so there is a rebuttable presumption that Section 112, paragraph 6 does not apply. And, once again, Defendants have failed to overcome this presumption by a preponderance of the evidence.

Defendants begin by stating that "[t]he word 'element' is a generic nonce word that connotes no definite structure[,]" and that the word "opening" "merely describes the *function* of the generic 'element' without imparting a definite structure." (D.I. 56 at 21) (emphasis in original) (citing *Mas-Hamilton Grp. v. LaGard, Inc.*, 156 F.3d 1206, 1213-14 (Fed. Cir. 1998)) Next, they argue that the other words recited in the claims, such as "engaging" and "urging," are

also merely "functional limitations[.]" (D.I. 56 at 21-22)

However, as Plaintiffs explain, it is wrong to read the relevant claim language as being devoid of evidence of structure. In claims 1 and 12, for example, structure is connoted through the claims' statement "that the opening element engages the inner walls of the clip arms and urges them away from one another." (D.I. 57 at 16) This indicates: (1) where the opening element is positioned (between the clip arms) and (2) that it is of sufficient size and requisite structure such that it can engage both clip arms and urge them away from one another. (*See* D.I. 60 at 11 (Plaintiffs noting that this limitation is "not merely a functional limitation as Cook argues . . .; it is also a structural limitation because it describes where the opening element is and which structures it engages")) Claim 1 also provides that "the opening element is movable between an expanded configuration and a retracted configuration to correspond to a movement of the clip between the open tissue receiving configuration and the closed configuration." (*Id.*, col. 15:48-52) The capability to expand and retract demonstrates that the opening element is *structurally* dynamic.

Defendants also note that "opening element" does not appear anywhere in the patent specifications. (D.I. 61 at 12) But based on the description of the "opening element" in the claims themselves, it is easy to identify the structures in the patent's drawings that constitute the "opening element"—the pieces shown between the clip arms in Figures 8A and B, 10A and B and 15A, B and C—and the corresponding descriptions of that structure in the specification. (*See, e.g.*, '027 patent, col. 11:48-50 (describing FIGS. 15A-D) & FIGS. 8A, 10A, 10B (incorporated by reference into the '731 patent at '731 patent, col. 1:7-20); *see also* Plaintiffs' Claim Construction Hearing Slides at 60)

20

Defendants also argue that the Court may not "rely on a figure alone to show corresponding structure when there [is] no supporting language in the written description." (D.I. 61 at 13 n.9 (citing *Lampi Corp. v. Am. Power Prods., Inc.*, 228 F.3d 1365, 1372-73 (Fed. Cir. 2000)) Again, however, the Court is not relying on the figures *alone*. The claim language provides evidence of structure, and the figures simply match that structure.

Defendants thus have not overcome the presumption that Section 112, paragraph 6 does not apply.

### 2.    Construction

Defendants request that if the Court rejects its argument that "opening element" is a means-plus-function limitation (which the Court now has), then the Court "should construe this term in accordance with Plaintiffs' description of 'opening element' . . ., and the components recited in the claims, to mean 'two rigid arms, located between the clip [legs], that translate the tensile force on the control wire to an outward radial force on the clip [legs].'" (D.I. 61 at 12 n.8 (quoting D.I. 57 at 16-17)) This description of the opening element comes from the '027 patent's specification, ('027 patent, col. 11:48-50), and is quoted in Plaintiffs' briefing as evidence that the specification provides structural limitations, (D.I. 57 at 16-17). But the quoted language refers to just one embodiment, and imposes more restrictions than the claims themselves impose. For example, the claims do not require the arms of the opening element to be "rigid." And Defendants point to no evidence of a disclaimer or lexicography by the patentee that would read an opening element without "rigid" arms out of the claims. *See GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014). Thus, the Court will not adopt this construction.

Because the claim language sufficiently describes the requisite structure and function of the "opening element," the Court recommends that "opening element" be afforded its plain and ordinary meaning.

## III. CONCLUSION

For the foregoing reasons, the Court recommends the following constructions:

1. "tension member" means "a member that fits inside the capsule, is positioned between the clip arms, and engages the clip arms to urge them radially outward."

2. "a linkage" means "a system of interconnected machine parts used to transmit power or motion."

3. "opening element" should be afforded its plain and ordinary meaning.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the district court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878–79 (3d Cir. 1987).

The parties are directed to the Court's Standing Order for Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the District Court's website, located at http://www.ded.uscourts.gov.


Dated: April 12, 2017

Christopher J. Burke
UNITED STATES MAGISTRATE JUDGE